This video was made in Cooperation with the Ministry of Health and Welfare of the Republic of Kyrgyzstan.  Next case is Laerdal Medical Corporation v. ITC, 2017, 2445. Mr. Kaplan, when you are ready.  Good morning, Your Honors. May it please the Court. The Commission committed two specific legal errors that I want to focus on today, subject, of course, to whatever the panel wants to question about. The first error is actually best articulated in their red brief here. If you look at pages 14 to 15, and it's repeated at 44 to 45, they explain what findings and determinations they were making, for example, at page 11 of the opinion, at appendix page 11. And what they seem to be explaining is that, yes, you may have pled this at the beginning under a Rule 12b-6 standard sufficient for us to institute, but at the end they went back, sort of reexamined the entire set of pleadings that went in, and then made some determinations about remedy. And there were three different reasons why we believe that that was legal error, probably the latter of which is pretty much dispositive of this case. The first reason is that it reads out the distinction between G-1 and G-2 of 1337. G-1 gives a list of criteria which, if they're met after an investigation is instituted, the relief is to be given. Whereas G-2 says, after a default and after it's instituted, the different relief under G-2 is to be given only upon some other determinations that the commission makes, specifically in G-2b and c, those determinations are listed. The second problem is it also disregards the distinction between G-1 and G, I'm sorry, and D-1. D-1 is the issuance of exclusion orders when there's not a default, and that is subject to certain determinations the commission made of the type they made here. But that requirement is left out of G-1. But the most important — excuse me, Your Honor, I apologize. The most important reason I think that this is an error is that there's a commission opinion from last year that we cited you in our papers. I think it's called In Re Electric Skin Care Devices. And I want to just read a couple of sentences. Is the commission bound by its own precedent as — I'm sorry? Is the commission bound by its own precedent in the same way that a court is? I believe that they are, Your Honor. I don't have authority from a court saying that, but I believe the commission takes the position, but I'm not sure. Well, clearly, they have divergences. I'm sorry? Clearly, this case diverges from the one you're citing us to. I would agree with that statement, but I'm not sure the commission does. I'm just not sure if they're saying they are following it or not. But I don't know the answer. So I just need to understand, Your Honor, is your argument that they got it right the first time, they're getting it wrong now, or is your argument that — and that they're bound by their earlier decisions? Well, my argument, I guess I would say, is twofold. They got it right the first time, they're getting it wrong now. But I think on this particular issue, it's not just whether they're bound by their own holdings. It's that the whole thing I'm about to read you is the commission's interpretation of their own enabling statute. And that is entitled to deference under normal standards of APA law. So if that answers your question. Has the commission issued, other than this opinion, has the commission issued any regulation or any other formal statement regarding its interpretation of their enabling statute? I would say yes, Your Honor. And that is the most relevant of the other thing they've issued, for lack of a better term, is the stuff we cited in our brief where they said repeatedly that the purpose of the pre-filing investigation is to determine specifically whether the complaint properly alleges a cause of action that you're pursuing, whether it's patent or trade dress, and that that's why they're permitted. They're defending a case in this Court now where they're arguing that's why they're permitted to dismiss a complaint without instituting, because the very purpose is to determine whether they should proceed, whether you have a proper allegation. And I think you're correct that once they proceed with an investigation, that as to defaulting parties, they must grant the relief subject to the public interest analysis. Then why didn't you appeal the copyright claims? That is a whole different issue that, to be honest, I would have to get into some privileged stuff to disclose that. A decision, I think I can generally say a decision was made that it would simplify the appeal without doing that. There's probably more to it, but I would get into the privilege. But, Your Honor, if I could just complete the thought on how they've interpreted their statute. If you look at pages 3724 to 3725, there's some language beginning at the bottom of 3724 where the commission says, The legislative history of Section 337G notes that the addition of the provision for default judgments was motivated by the fact that discovery is usually difficult if not impossible to obtain from named respondents who have chosen not to participate in the investigation. I'll skip the cites now, but the next sentence, Thus, Congress recognized that without participation, it is difficult for complainant to establish sufficient facts to warrant the finding of a violation of Section 337 or what relief is applicable. So what the commission is saying there is Congress, the commission's interpretation of the statute is Congress decided not to put the complainant to its proofs that it would normally have under the normal standard of proof. Congress, because it says you may not be able to establish even a violation, much less a relief. That as long as you pass the institution as listed in the G, that you make this order to show cause why they shouldn't be held in default, that you, you know, sir. The line of reasoning makes a lot more sense than the line of reasoning and interpretation that was applied in your case. I'm sorry? Are you saying that the interpretation here makes more sense than the interpretation that's been applied in your case, right? I think the legislative history supports that. I'm saying more than that. I'm saying yes, Your Honor. But I'm also saying, Judge Stoll, that we don't just have complainant here arguing the statutory interpretation. We have the ITC interpreting its own statute. Differently than it is in this case. Differently, we believe, than it did here. So what we're saying is once we met, and there's no dispute here, I don't think. Maybe my colleague will disagree, but I don't think from the briefing that the commission is arguing that their institution decision under those broad pleading standards and the requirements of ITC rules that go beyond notice pleading, they're not saying that the institution decision was wrong. They shouldn't have instituted. I think what they're saying is, yes, we instituted correctly. And they can't be saying that, by the way, because the first part of G, where they're required to presume the facts to be true, they did that, and they wouldn't reach that. If we didn't have a proper complaint at the beginning, it would just be dismissed. There would be no reason to reach G to even presume the facts true. The commission, I think the difference between the sides to really tee up the dispute is basically what is the commission's job after a default upon a properly, at least at the beginning, alleged violation when it proceeds? Is the commission supposed to go reexamine things under the new standard of proof that they seem to apply, or are they just supposed to do a checklist in G-1, which is what we hear? I understand that the district court, one of the things that they were relying on was district court practice, and that in the district court, you agree that in that circumstance, the district court is going to do more than just say, OK, you're in default. I'm going to automatically enter judgment against the party in default. Instead, it will undertake an analysis of various factors. It differs a little bit from circuit to circuit and what those factors are. But I understand your position to be that here, it's different. And one could argue that Congress legislates against that backdrop, understanding that that's how district courts handle default situations. And so when it included the language that you're going to assume the facts are alleged as true in the complaint, that it intended some sort of additional analysis. But your response, as I understand it, is that no, the statute says shall. Do I understand that correctly? Well, I would say it two ways. I think, first of all, I think, Your Honor, what you're saying is correct in terms of your position, that we would say that district court analysis doesn't apply. But I would respectfully take exception when you say, when Congress legislates and they say presume the facts to be true, so, you know, based on district court, are they going to assume there's going to be something more than just that? But the statute, it's not that the statute says presume the facts to be true, that we're arguing, therefore, they're mandated to issue the relief. It's that there's a second piece of that that says and shall, upon request, issue. If it was supposed to be district court, that wouldn't be there because I don't have Rule 55, I believe it is in the district. It's more permissive. Yeah, it's more permissive. So Congress could have solved this problem, Judge Sewell, by if you read the analysis from the commission case that I just read, where they said it's difficult to prove a violation or to establish the relief. Congress could have drafted G1 to say if the respondent's the fault and you've properly alleged, then you're entitled to the relief unless the complainant, you know, but the complainant has to show that the reason he can't prove his case is because of the discovery that he can't get from the department. Right. I mean, the IGC is a creature of statute and the Congress understands that very often the defaulting parties are not going to even be in the United States. Almost always, but yes, correct. Right. And so my response, my full response to you, Judge Sewell, Stoll, I'm sorry, is that Congress chose to solve that problem not by putting a requirement on the complainant to prove what was going on and what discovery they couldn't get, but to say, well, just say that if you meet the very broad plausibility. Remember, plausibility is that there's a whole bunch of cases. We cited it in our brief. It's pretty much black-letter law. They can only dismiss you on 12b-6, you know, if there's sort of no possible fact pattern based on what you've pled, given all the reasonable inferences. It's very—and Congress just said if you meet that liberal broad standard, we're going to give you the relief if the importers don't show up. And I would argue, Judge Stoll, that far from being sort of the back—using the backdrop of the district court cases, Congress knows about the district court federal rules, and I would argue this is probably an intentional departure from that because it has language that's much stricter than what's in the district court permissive rules.  Yes, sure. It also says—and I just want to see what your response is to this. It says that the ITC shall, upon request, issue an exclusion. So the words are an exclusion, not the relief requested by the petitioners or the relief requested in the complaint. What do you make of that? It just says, I mean, here you did get an exclusion. Well, here's what I would say. I think—I would not disagree—in fact, I would advocate that the ITC, I think, has discretion, if they had wanted to, to say, we're going to give you the exclusion order against the products you sue, but we don't like the form of yours. It's too broad. It's too big. Whatever. We're going to craft a narrow one or make us. So we don't disagree that they can order the form of exclusion order or form of cease and desist order or both. A lot of this electric devices case, this is about the discretion among those the ITC has. Where I think I would disagree with, and I think it's more the implication, is that they issued an exclusion order against patent rights and trademark rights, but those are separate causes of action that just happen to be additionally in this case. Let's suppose I didn't have those other rights and I just had proceeded from the beginning on trade dress. I don't think that if the Court, if this Court concludes that they couldn't do what they did in that case, I don't think the fact that I had two other claims that happened to be in this case justifies what was done here. I think you have to look at each one separate. Otherwise, how could I be better off if I just took away the other claims and put them in a separate proceeding, Your Honor? Counsel, you're mostly through your rebuttal time. I would like, unless the panel has questions, I did want to talk about the merits, but I'd like to save my rebuttal time. So unless Your Honors have questions. Thank you very much, judges. Thank you, Leader. May it please the Court. At no point in this investigation did Lardell ever recite a legally protectable trade dress. So regardless of the party's defaults, the absence of a trade dress precludes trade dress infringement. But wait. Let's talk about the statute. You guys did a full investigation before you, of the complaint, before you started the investigation, right? The Commission did a pre-institution investigation. Right. And, in fact, they said some of the allegations weren't good enough and refused to institute on some of those claims, right? They did, and the specific reason why was that they failed to recite a specific proof that these items were actually imported. At no point were any claims rejected. But they had the ability to reject them on any grounds, right? Yes. And that's a statutory requirement that that occurs before the proceeding even begins, something that the district court, a district court doesn't do, right? A district court, yeah, they would not do that. But, and the Commission, we try to screen out deficient cases, but it's an ex parte process. It's not perfect. We don't do it, I guess, correctly all the time because we don't have . . . But the Commission's a creature of statute. So you let it go, you institute, you institute against all of these parties, and you institute on all of these claims. And then you have defaulting parties who then default, and you have a statute that says you shall enter an exclusion order, a cease and desist order, or both, subject only to the public interest analysis. Why, why isn't that what's supposed to happen? Well, the difficulty here, Your Honor, was that when we looked at the entire record, there just wasn't a trade dress that we could find that we could issue relief against. But the trademark and trade dress allegations were very similar. And you found one to be sufficient and the other not. Well, the trademark is a registered trademark, so they had already gone to the PTO and had the trademark office say that you have this right. That's not the case in trade dress. In trade dress, they have to show everything. They have to show that it's secondary meaning or inherently distinctive, that it's nonfunctional, and also that the likelihood of confusion. Here, that's just not what they did. Here, and what really happened was— They alleged that they had a legally enforceable trade dress, right? And no one disputed that? We dispute that there is a legally enforceable trade dress. But you're not a party, right? No party asserted a defense saying there was no legally enforceable trade dress because the trade dress was functional or there was some other problem with the trade dress that they were claiming, right? Obviously, there's no parties here. Nobody made that argument. But there is no trade dress that the Commission— What Laerdal alleges as its trade dress is so vague and abstract that it's utterly meaningless. Like, for example, Laerdal cites a trade dress in the types of plastic used for different components. It doesn't describe what types of plastic there are. It doesn't describe what those different parts are. It's completely unclear. It doesn't designate any source, and it can never be enforced. The trade dress is appearance, right? Correct. And we can look at the pictures. We can see what the appearance is, and there is some description there. We can see how close it is to the accused who haven't responded. Well, their defined trade dress doesn't actually refer to the pictures, but even if it did, you still couldn't tell the types of plastic used for different components. There's simply no way to determine whether some other product— Is that not a trade dress? I'm sorry? Is the type of plastic part of the trade dress? That's what they define as a trade dress. Now, I'm not sure how that really could be a trade dress. But your point here, then, what you're saying is we do an analysis up front. If we see something inadequate, we tell them it's inadequate. They then have a chance to come back. And then we institute—the other parties don't come in, don't do anything, and at the end of the day, without even going back to them, we're going to say you didn't prove your case against defaulting parties, right? Well, when it came down, that is what happened. That is what happened. So you never—you said they defaulted, they never raised any defense. We, the Commission, are going to raise a bunch of defenses and not give you an opportunity to address them. And we're just going to refuse any relief, right? So that's what happened. But it's also Laerdal's obligation to define its trade dress in the first place. When they proposed relief to us, they proposed—they didn't define their trade dress at all. They just said, please exclude products that infringe our trade dresses, and they brought a C citation to 70 pages of documents. Didn't say what about those documents actually was their trade dress. And it's black-letter law that photos alone can't define a trade dress. As to any of these parties now, would— is it your view that they would be collaterally estopped against any of these parties because you made these findings, even though they never had an opportunity to address your defenses? Well, no. There's no issue preclusion because there was no actual litigation. So there is no collateral estoppel. And if Laerdal had a legally—that it could have— a legally defensible trade dress to us, they could have done so months ago, and it might very well have resolved already. You never put them on notice that you were going to enter this—refuse the order. Well, they've been on notice since at least when we issued our commission opinion and— So you're saying instead of appeal to us, they should have reopened—asked you to reopen this determination that you made? Well, that would be—no, that they would file a new complaint entirely. If they wanted us to— But this is my problem, is that the statute, I think, is pretty clear on its face. But even putting that aside, why is what the commission did not an APA violation here? Well, Laerdal itself waived any due process argument. But even on its merits, there wasn't anything else the commission could have done. There's nothing in the record— How can you waive a due process argument when you didn't even put them on notice? On page 32 and 33 of their brief, they explicitly waived their due process argument. But they argued an APA violation, did they not? They argued in their initial brief, and in their reply brief, they said that this wasn't an issue, that they were just going to rely on the shall language. But, I mean, regardless, there's no other process the commission could have afforded. They defined their trade dress. They sought a default based on the record as it stood. The commission couldn't have come up with a different trade dress. And, like they say, the commission would have had its discretion to have chosen a different trade dress. The commission doesn't know what aspects of these are—do have secondary meaning, what actually shows or reflects what about these products is unique. Can you go back to your argument that they waived any APA violation argument? Where is that? You said it's on page 32 of the blue brief? Can you point to it? That's in the reply brief. Page 32 of the reply? 32 of the reply brief. The one that's titled, the commission did not comply with due process? Well, it says, the second last paragraph on the bottom, at any time the issue of due process now appears to be moot. So they themselves are saying that the issue is moot. Well, they're saying it's moot because you didn't give them any chance. I mean, if you read that sentence in context, especially in the context of the whole section, which is entitled that you violated due process, their point is you didn't give them a chance for process, so there's not much they can do about it now. Well, the commission, there wasn't much process the commission could have done. We could have allowed them, I guess, to refile their complaint. But that's tantamount to starting a brand-new investigation. They would then have to re-serve it on all departments. How would it normally work? My understanding was how it would normally work, is if you thought there was a problem with the pleading, you wouldn't have instituted on that issue. Do I misunderstand how it works? The commission, we try to screen out the ones that don't work, but the commission does often let cases go forward. And what happens in those situations? I mean, at some point, can the commission say, oh, we made a mistake? How does that work? Or does it just work out because there's no defaulting party, and so things work out? Well, generally, in trade dress and other cases, people adequately define what they're trade dressing from the get-go. Here, it was so easy for you to see that there was no trade dress defined. Why wasn't it screened out under the statutory screening procedure that the commission has the authority to do? If it was that easy to conclude that they didn't properly identify a trade dress, you would think that that's the stage, the point at which that would happen. Ideally, that would have happened, but it didn't here. And when the commission ultimately determined the final determination, in this case, it concluded there was no trade dress right, and that it determined that the reasonable thing to do was not to issue an order. I don't even understand your argument where you say, we didn't really apply a 12B6 standard at the end of the day. We were applying some different standard, and that, yeah, what we applied maybe at the beginning is 12B6, but this is different. I don't understand that argument, because what you ultimately said is the base of the pleading wasn't good enough. Why is that not just a 12B6? Well, the commission was ultimately making a final determination, and what we did, the difference is we accepted all facts as true, as is required by G1, and with all those facts as true, we found out that there was no legally defined trade dress. So the difference is that when you're actually at the final stage, you have to be able to physically write an order as to what products should be excluded. And citing all of their district court cases, there's many cases where they say, this is, we're not going to dismiss this trade dress claim because it's really vague. It is really vague, though, and you would have to at some point fill in the blanks and basically give us enough to write a specific trade dress relief on. So why didn't you go back to them and say, well, we accept your pleading that you have a trade dress. We need more information with respect to fashioning the exclusion order. Why wouldn't that have been the way to do it, since the statute says you shall enter some order? Well, at that point, the parties had already defaulted on the thing. If we were going to change the scope of what they were accused of, they would then need to be put on fair notice of that. So the defaulting parties get more due process than the complainant before you? Well, no, Your Honor, but we are ultimately – Isn't that what you just said? No. So Section 337 at its core is to regulate unfair acts in trade. Here, everything they said, we just – we did not see an unfair act in terms of trade dress infringement. And also, under the Lanham Act, Lerdal has the burden to show that their unregistered trade dress is not functional. They didn't make any attempt to do that, and their products are medical equipment. It's broad trade dress that clearly is encroaching on the function of the item. They're just arguing that the shape and dimensions of a cervical collar are a trade dress. There's no way to make a competing, I guess, cervical collar that just is nowhere near that. And then when you look at the – Counsel, you've been on the defensive. I'm sorry. Do you have any permanent statements you'd like to make concerning the commissions? Yeah, I'm just trying to make sure you get your notion of being here. So the features they say, they just are not specific. Lerdal specifically used very abstract language to make specific features that are so broad that they're just unenforceable. They talk about the arrangement, shape, and placement of internal parts, the spatial relationship of the length and the circumference to the width and the thickness, the spatial relationship of the length to the width and the thickness. And these are all vague arrangements, and these relationships are – Are you saying that if the commission is to issue an exclusion order, it has to be able to define what is excluded, and it doesn't know how now? I mean, that's exactly what I'm saying. And also, we have to be able to explain it to customs, and customs needs to know. And if we ourselves cannot understand what these features mean, we can't tell functionality or likelihood of confusion or possibly enforce them. And pictures aren't enough? The pictures aren't enough, because what is the spatial relationship of the length and the circumference to the width and the thickness? That's just an opaque thing. I don't know what that means. I don't know how you would tell if something is similarly likely confusing to that. And their other features are so abstract that they're not really describing their own products. They're just describing the type of product generally. Like with their mannequins, they're describing facial features, musculature, position of the body, angle and position of the extremities, mouth opening. These are things that every CPR mannequin is going to have. They don't say anything about them that is unique. They just vaguely cite the parts of the mannequin. But you didn't enter an order that says the commission decides that we can't define what would be excluded enough for customs to know what to exclude. You entered an order saying they don't have a valid trade dress. Right? And what we did, we looked at all their papers and we found that they did not have a valid trade dress based on what was in the record. But the commission has no authority to declare any property right invalid unless it is asserted as a defense to an infringement claim. Right? For trade dress, they have to show that they have that right in the first place. So that would be different in terms of like patents or something. But they need to establish that they have a trade dress. If what you were saying, you could just say any trade dress and then the commission would be regardless how ridiculous. I didn't say any trade dress. I mean, their allegations were very, very similar to what they asserted with respect to the trademark. And there are such things as common law trademarks that they would have to establish the right to. Right? There are such things as common and those require more that when you have a registered trademark, there is the presumption that it's valid. With a trade dress assertion, there is not a presumption that it's valid unless they were to register it, which they didn't do. I'm over my time. Your time is up. Mr. Kaplan, we'll give you two minutes for rebuttal if you need it. I'm sorry? Two minutes for rebuttal if you need it. Okay. Thank you very much for restoring some of my time. What I want to hear is the response to the commission's argument that how do we know what to exclude if you didn't make it clear exactly what you were asserting? Your Honor, I would answer that. Well, let me answer that. It plays into something else I want to say, but I'll go back to mine and answer yours first. Even if that argument had mirrored, that's essentially what was going on in the Abercrombie and Fitch case. That argument requires nothing more than then issue an order at the end, say, not dismissing my case and declaring I don't have a trade dress, but saying the order, the form of exclusion order that you've entered, we don't believe is specific enough for these reasons, and please enter a new order that better specifies your trade dress. I think, Your Honor, I want to bring us back to this two different standards. Counsel's making here today what I believe is a very different argument than what happened below and what happened in their red brief here. He's now saying, I think, the way I interpret it, there really was no trade dress. We sort of just didn't catch it at the beginning. But that's not what they argue in their brief here. They argue quite the contrary. Trade dress is vague. And this was part of a complaint with patents and trademarks and trade dress, was probably just dragged along without much pleading. But in their briefing here, they never say we made a mistake. They say we didn't make a mistake in institution. We didn't dismiss your claim at the end. I want to focus on the standards. If I could direct you to look at pages 540 of the appendix and 420 of the appendix to make it easier for the Court. 420 is smaller, so if you just look at that, I can hold up 540, and maybe that can make the job quicker. If you look at what's on 540, Your Honors, and then you look, for example, at 420 of the appendix, and you see, and this is just one example of many products, but you see, you compare 540 to what the defendants are bringing at 420. And at the beginning of the case, under a broad 12B6 standard, it's hard to say that with this in my complaint and what's on 420 in my complaint, I can prove no set of facts that would show that they're infringing my, it's a condi, every curve, every hole, you know, the colors, you know. So what I'm saying, again, to go back to Judge O'Malley's question about the argument that it can't be specified, at the beginning of the case, like in the Abercrombie case, the role is to look at this and say, well, maybe you didn't specify it in the text as well as you could have, so in the order, instead of saying, our trade dress is bright colors, we're going to make you say it's yellow at this part and blue at that part. Or maybe you said, you know, the curvature, we're going to make you specify. We don't dispute that the commission would have, we can't mandate the form of order. Can I ask you something? Sure. Is that description to be read when we look at the photo? Yes, Your Honor. And that's what some of the cases, the Abercrombie case, and there were several others, where they say, here's the description and the cases even say, I'll paraphrase, but it may not be good enough at the end of the case, but for notice 12b6 standard, it's good enough, and we can narrow the form of order. So that's all we're saying. They just didn't have the right to go back at the end. And the statute, G1, doesn't say, go back and see if they prove their case. Counsel, as you can see, your light, that light is on. Okay. May I make one more sentence? One more sentence, yes. I'm sorry? One more sentence, yes. Yes. And I would simply say that the commission has in the past issued orders with photos on the back of their orders to specify what products are to be excluded. Thank you very much, Your Honor, for the extra time, particularly. Take the case under review. Thank you, counsel.